Filed 11/4/21  P. v. Oliver CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>JACK T. OLIVER,<br><br>  Defendant and Appellant. | A159606<br><br>(San Francisco County<br>Super. Ct. No. SCN113500) |

Jack T. Oliver (appellant) appeals from the trial court's denial of his petition for resentencing pursuant to Penal Code section 1170.95[1] on the ground that he failed to demonstrate a prima facie case.  We reverse and remand.

LEGAL BACKGROUND

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to

---

[1] All undesignated section references are to the Penal Code.

1

kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).) In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' (§ 1170.95, subds. (a)(1)–(3); see also § 1170.95 subd. (b)(1)(A).) . . . [¶] Where the petition complies with subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. (§ 1170.95, subd. (c).)" (*Lewis, supra,* 11 Cal.5th at pp. 959–960.)

"If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial

2

sentence.' (§ 1170.95, subd. (d)(1).) 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' (§ 1170.95, subd. (d)(3).) At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' (§ 1170.95, subd. (d)(3).)" (*Lewis, supra,* 11 Cal.5th at p. 960.)

## FACTUAL AND PROCEDURAL BACKGROUND

*Record of Conviction*

In 1985, a jury found appellant guilty of first degree murder (§ 187), residential burglary (§ 459), and robbery (§ 211).

The facts underlying appellant's conviction, as set forth in the Court of Appeal opinion affirming the judgment, are as follows: "On Monday, June 14, 1982, when his employer became concerned at his absence from work and alerted the management of his apartment complex, the body of [the victim] was discovered by two maintenance workers. When they arrived, the door to the apartment was broken and standing ajar; [the victim]'s bound body was on the bedroom floor. Although the body showed signs of a struggle, [the victim] died from asphyxiation caused when a pair of his underpants with which he had been gagged forced his tongue back into his throat, suffocating him. [The victim] had apparently died sometime between 5 p.m., Sunday, June 13, 1982, and the afternoon of the following day when his body was discovered.

"[The victim]'s younger brother, who had visited [the victim] in April or May, came to San Francisco and provided the police with a list of items comp[iled] from memory which he believed were missing from the apartment. That list included a small television set, two pieces of stereo equipment, a

3

35-millimeter camera, a hand-held calculator and a black attaché case. Various fingerprints were recovered from the crime scene.

"The murder remained an unsolved and open case. When San Francisco installed a fingerprint computer in March 1984, fingerprints from [the victim's] case were among those from various unsolved homicides which were run through the computer. The computer found a close correspondence between the prints of defendant and two prints found in [the victim]'s apartment.

"In June 1982, defendant had been living with Ms. Toni Oldyn. On June 17, Oldyn, defendant, Denny Mickle and a fourth man were arrested in connection with their possession of two television sets which had been stolen on June 11, 1982, from a house down the street from their apartment. In 1984, once the officers investigating [the victim's] murder learned that defendant's prints had been identified, they pulled his arrest record. Finding the record of defendant's 1982 arrest, they then checked the fingerprints of Oldyn and Mickle against the other prints found in [the victim]'s apartment. They also checked pawnshop records for June 1982. While the fingerprint check was unproductive, the pawnshop records showed that Oldyn had pawned two pieces of stereo equipment on June 23, 1982. These pieces of equipment were traced to their present owner and introduced as evidence at trial." (*People v. Oliver* (Nov. 5, 1986, A030861) [nonpub. opn.].)

The preliminary hearing transcript includes testimony from Oldyn, under a grant of immunity. Oldyn testified that, a few days before her arrest for possession of stolen property, "Dennie" told appellant he had a key to a friend's house who was leaving town and said, " 'Come down, go with me,' " and they then left together. They returned with a third man and a large

number of items, some of which matched the items missing from the victim's apartment.

The preliminary hearing transcript also includes testimony from a police officer who testified that out of seven usable prints found at the crime scene, two were the victim's, two were appellant's, and the remaining three were unidentified.

The Court of Appeal opinion makes clear that appellant was convicted of felony murder: the court rejected a claim that his sentence was excessive because there was no evidence his participation was "less culpable than in the ordinary felony-murder situation"; and the court rejected appellant's claim that the felony murder rule was unconstitutional. (*People v. Oliver, supra,* A030861.)

*Resentencing Petition*

In 2019, appellant filed a petition for resentencing pursuant to section 1170.95. In his petition, he averred that he was not the actual killer, he did not aid or abet the killer with the intent to kill, and he was not a major participant in the felony or did not act with reckless indifference to human life during the felony. The trial court appointed counsel.

The trial court found appellant failed to establish a prima facie case because "the evidence shows that [appellant] was the actual killer in the case . . . . [¶] Any kind of other issues regarding other fingerprints that were found in the apartment, that was all vetted in front of the jury and upheld by the court of appeal. I don't find there's any second person involved. I do find [appellant] was the actual killer properly convicted under the felony murder theory and could still be convicted under a felony murder theory under current case law."

DISCUSSION

"While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citation.] [¶] . . . In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis, supra,* 11 Cal.5th at pp. 971–972, quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 978–979 (*Drayton*).) "As the People emphasize, the 'prima facie bar was intentionally and correctly set very low.' " (*Lewis,* at p. 972.)

*Drayton, supra,* 47 Cal.App.5th 965, quoted heavily by the Supreme Court on this issue in *Lewis,* as noted above, is instructive.[2] In *Drayton,* the petitioner pled guilty to murder and admitted he entered the victims' home with the intent to commit theft. (*Drayton,* 47 Cal.App.5th at p. 969.) The preliminary hearing testimony revealed that four men, including the

---

[2] *Drayton* was abrogated on another ground in *Lewis.* (*Lewis, supra,* 11 Cal.5th at p. 963.)

petitioner, entered the victims' home. (*Id.* at p. 968 & fn. 2.) The petitioner had a gun and restrained and struck one of the victims; the other men sexually assaulted another victim and killed a third. (*Id.* at pp. 968–969.) In his petition for resentencing, the petitioner declared that he " 'was not a major participant in the felony or [he] did not act with reckless indifference to human life during the course of the crime or felony.' " (*Id.* at p. 970.) The trial court found the petitioner failed to make a prima facie showing of entitlement to resentencing, reasoning: " 'This court finds that petitioner was a major participant in the underlying felony, both the burglary and the robbery. Additionally, the court further finds that he acted with reckless indifference to human life, which I think is blatantly apparent by his conduct, being armed and his participation in this event, as well as the conduct of his co-conspirators, the other individuals.' " (*Id.* at p. 972.)

The Court of Appeal reversed: "At this stage of the petition review process, governed by section 1170.95(c), the trial court should not have engaged in this factfinding without first issuing an order to show cause and allowing the parties to present evidence at a hearing . . . . In making an assessment of the petitioner's prima facie showing, the trial court should not have evaluated and weighed the evidence but instead should have accepted petitioner's asserted facts as true." (*Drayton, supra,* 47 Cal.App.5th at p. 982.) In other words, "the trial court should accept the assertions in the petition as true unless facts in the record conclusively refute them as a matter of law." (*Id.* at p. 968.)

Appellant submitted a declaration averring that he was not the actual killer. The record of conviction demonstrated that he was convicted of felony murder, the victim died from a gag placed in his mouth during the robbery, and appellant participated in the robbery which appeared to involve more

than one person. The trial court weighed the evidence to discredit appellant's averment that he was not the actual killer and to find, based on the evidence, that appellant was the actual killer. Under *Lewis* and *Drayton,* this was inappropriate at the prima facie stage of the resentencing petition.[3]

## DISPOSITION

The trial court's order denying the petition is reversed and remanded with directions to issue an order to show cause under section 1170.95, subdivision (c) and hold a hearing pursuant to section 1170.95, subdivision (d) to determine whether to vacate appellant's murder conviction and recall his sentence and resentence him.

 

 

_____

SIMONS, Acting P. J.

We concur.

 

 

_____

NEEDHAM, J.

 

 

_____

BURNS, J.

(A159606)

---

[3] We note that both *Lewis* and *Drayton* were decided after the trial court's ruling.